UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| CODY LEAVITT,<br>Petitioner,<br>v.<br>DWIGHT NEVEN, *et al.*,<br>Respondents. | Case No. 2:12-cv-00625-MMD-NJK<br>ORDER |

This *pro se* habeas petition comes before the Court on Respondents' motion to dismiss (ECF No. 124). Petitioner has opposed (ECF No. 125), and Respondents have replied (ECF No. 140). Petitioner has also filed several miscellaneous motions, including a motion for discovery and an evidentiary hearing (ECF No. 126).

## I. BACKGROUND

Petitioner in this action challenges his 2009 state court conviction, pursuant to a guilty plea, of battery causing substantial bodily harm with use of a deadly weapon. (ECF No. 50 at 1-2.) The charges arose from a fight between Petitioner and Jarred Blake on December 17, 2006. Affidavits submitted by Petitioner as part of his postconviction petition in state court describe the following.

On the night of December 17, 2006, Blake discovered his ex-girlfriend, Ruby Carrillo, hanging out with his friend, Petitioner, at Petitioner's house. Blake asked Carrillo to come outside, which she did. Blake began to yell at Carrillo and then began to choke her until he was pulled off by his brother. Petitioner came outside, waving a knife and threatening to stab and kill Blake but was held back by his mother and Carrillo. Blake pulled out a knife, Petitioner broke free, and the two met in the middle of the yard, where Blake kicked Petitioner, who stumbled but stayed upright. As Petitioner regained his

///

///

///

balance, he stood up and swung at Blake with the knife, stabbing Blake in his right side.[1] (ECF No. 56-7 (Ex. G) at 27-28.)[2]

Carrillo drove Blake to the hospital, and on the way to the hospital, Blake put his knife in Carrillo's glovebox. Carrillo found the knife a few days later and took it to police. (*Id.* at 35.)

Petitioner was charged with battery with use of a deadly weapon causing substantial bodily harm. (ECF No. 56-2 (Ex. B) at 2.) He entered a plea pursuant to global negotiations (ECF No. 56-4 (Ex. D) at 2-6) in which he also agreed to enter a plea in a separate criminal case.[3] Petitioner was sentenced to four to ten years, concurrent to his sentence in the other case. Since filing his Petition, Petitioner has been released from custody.

The Petition in this case, filed in 2012, was dismissed in 2015 as completely unexhausted. (ECF Nos. 1; 68.) After the dismissal, Petitioner returned to state court to exhaust his claims through the filing of a third state habeas petition. (ECF No. 98-1 (Ex. DD).) Following the Nevada Court of Appeals' decision affirming denial of his petition as untimely and successive (ECF No. 98-11 (Ex. NN)), Petitioner filed a motion to reopen this action, which this Court granted. The Court ordered Respondents to answer or otherwise respond to the amended petition.

///

---

[1]This information came from Blake's own affidavit. In his affidavit, Blake states that it was Petitioner who charged him, but in an email he purportedly wrote during Petitioner's state postconviction proceedings, Blake indicates he charged Petitioner first. (ECF No. 56-7 (Ex. G) at 30.) An affidavit submitted by Blake's brother also seems to indicate that it was Blake who charged Petitioner first. (*Id.* at 38.)

[2]The exhibits cited in this order, constituting the relevant state court record, are located at ECF Nos. 51, 56, 98, 111 and 124.

[3]Petitioner was charged in the companion case with battery with use of a deadly weapon, first degree kidnapping, sexual assault with a minor under fourteen, lewdness with a minor under fourteen, and battery with intent to commit sexual assault. (*Leavitt v. Neven*, No. 2:12-cv-987-JCM-CWH, ECF Nos. 61-3; 61-6.) He ultimately pleaded guilty to child abuse and neglect with substantial bodily harm. He was represented by the same attorney in both cases. That conviction is the subject of another federal petition in Case No. 2:12-cv-987-JCM-CWH.

Respondents now move to dismiss the Petition as untimely, unexhausted, and procedurally defaulted.

## II. TIMELINESS

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") established a one-year period of limitations for federal habeas petitions filed by state prisoners. The limitations period runs from the latest of

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). The limitations period is tolled while "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." *Id.* § 2244(d)(2). An untimely state habeas petition is not "properly filed" and thus does not toll the limitations period. *Pace v. DiGuglielmo*, 544 U.S. 408, 413 (2005).

Respondents argue that the Petition is untimely. (ECF No. 124 at 5-7.) Respondents' argument is apparently based on the incorrect premise that the Petition is deemed filed as of the date of reopening this action. The Court reopened this action, which reopened the amended petition filed on September 27, 2013. To the extent Respondents argue that the amended petition was untimely when it was filed on September 27, 2013, the amended petition relates back, in its entirety, to the original petition in this case, which Respondents concede was timely. Accordingly, the motion to dismiss this action as untimely will be denied.

## III.    EXHAUSTION

Under 28 U.S.C. § 2254(b)(1)(A), a habeas petitioner first must exhaust state court remedies on a claim before presenting that claim to the federal courts. To satisfy this exhaustion requirement, the claim must have been fairly presented to the state courts completely through to the highest state court level of review available. *E.g.*, *Peterson v. Lampert*, 319 F.3d 1153, 1156 (9th Cir. 2003) (*en banc*); *Vang v. Nevada*, 329 F.3d 1069, 1075 (9th Cir. 2003). In the state courts, the petitioner must refer to the specific federal constitutional guarantee upon which she relies and must also state the facts that entitle her to relief on that federal claim. *E.g.*, *Shumway v. Payne*, 223 F.3d 983, 987 (9th Cir. 2000). That is, fair presentation requires that the petitioner present the state courts with both the operative facts and the federal legal theory upon which the claim is based. *E.g.*, *Castillo v. McFadden*, 399 F.3d 993, 999 (9th Cir. 2005). The exhaustion requirement insures that the state courts, as a matter of federal-state comity, will have the first opportunity to pass upon and correct alleged violations of federal constitutional guarantees. *See, e.g.*, *Coleman v. Thompson*, 501 U.S. 722, 731 (1991).

Respondents argue that the Petition remains unexhausted because Petitioner did not present any claims in his return to state court. Rather, they argue, his petition stated only "see habeas," and although petitioner claims he attached his federal petition to his filing, the federal petition was "left side filed" (ECF No. 124 at 9), meaning that it was a loose document and not part of the active state court record.

Even assuming the federal petition was attached to the state court petition, the Court is not convinced that a petition stating only the term "see habeas" over and over again, without more, constitutes fair presentation of the claims in the federal petition to the state courts. The term "see habeas" does not make clear what Petitioner is referring to. Moreover, it is not clear that the state courts actually understood Petitioner to be attempting to incorporate his federal petition by reference. The state trial court, in finding that Petitioner had failed to establish cause and prejudice, noted that Petitioner "just continues to say 'See Habeas' [and] failed to set forth any specific factual allegations in

the instant matter." (ECF No. 98-10 (Ex. MM) at 6.) The Court need not decide the issue, however. It is clear that even if Petitioner's claims remain unexhausted, they are procedurally defaulted.[4]

## IV. PROCEDURAL DEFAULT

A federal court cannot review a claim "if the Nevada Supreme Court denied relief on the basis of 'independent and adequate state procedural grounds.'" *Koerner v. Grigas*, 328 F.3d 1039, 1046 (9th Cir. 2003). In *Coleman v. Thompson*, the Supreme Court held that a state prisoner who fails to comply with the state's procedural requirements in presenting his claims is barred from obtaining a writ of habeas corpus in federal court by the adequate and independent state ground doctrine. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). A state procedural bar is "adequate" if it is "clear, consistently applied, and well-established at the time of the petitioner's purported default." *Calderon v. United States District Court (Bean)*, 96 F.3d 1126, 1129 (9th Cir. 1996). A state procedural bar is "independent" if the state court "explicitly invokes the procedural rule as a separate basis for its decision." *Vang*, 329 F.3d at 1074. A state court's decision is not "independent" if the application of the state's default rule depends on the consideration of federal law. *Park v. California*, 202 F.3d 1146, 1152 (9th Cir. 2000).

The Nevada Court of Appeals affirmed dismissal of Petitioner's third state petition as successive and untimely under NRS § 34.810 and § 34.726. (ECF No. 98-11 (Ex. NN).) To the extent the third petition did not exhaust Petitioner's claims, it is clear that these bars would apply to any petitions Petitioner might bring in the future to exhaust his claims. The Ninth Circuit has held that application of the timeliness rule in NRS § 34.726(1) is an independent and adequate state law ground for procedural default. *Moran v. McDaniel*, 80 F.3d 1261, 1268-70 (9th Cir. 1996); *see also Valerio v. Crawford*, 306 F.3d 742, 778 (9th Cir. 2002). The Ninth Circuit also has held that, at least in non-capital cases, NRS § 34.810 is an independent and adequate state ground for procedural default.

[4]A claim may be considered procedurally defaulted if "it is clear that the state court would hold the claim procedurally barred." *Sandgathe v. Maass*, 314 F.3d 371, 376 (9th Cir. 2002).

*Vang*, 329 F.3d at 1074; *Bargas v. Burns*, 179 F.3d 1207, 1210-12 (9th Cir. 1999). The Nevada Court of Appeals' decision did not depend on the application of federal law in deciding that the Petition was procedurally barred. Accordingly, the Nevada Court of Appeals relied on independent and adequate state law grounds in affirming the dismissal of Petitioner's second state habeas petition as untimely and successive. The claims are therefore procedurally defaulted.

Where such a procedural default constitutes an adequate and independent state ground for denial of habeas corpus, the default may be excused only if "a constitutional violation has probably resulted in the conviction of one who is actually innocent," or if the prisoner demonstrates cause for the default and prejudice resulting from it. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

To demonstrate cause for a procedural default, the petitioner must "show that some objective factor external to the defense impeded" his efforts to comply with the state procedural rule. *Murray*, 477 U.S. at 488. For cause to exist, the external impediment must have prevented the petitioner from raising the claim. *See McCleskey v. Zant*, 499 U.S. 467, 497 (1991). With respect to the prejudice prong, the petitioner bears "the burden of showing not merely that the errors [complained of] constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *White v. Lewis*, 874 F.2d 599, 603 (9th Cir. 1989) (citing *United States v. Frady*, 456 U.S. 152, 170 (1982)).

To demonstrate a fundamental miscarriage of justice, a petitioner must show the constitutional error complained of probably resulted in the conviction of an actually innocent person. *Boyd v. Thompson*, 147 F.3d 1124, 1127 (9th Cir. 1998). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). This is a narrow exception, and it is reserved for extraordinary cases only. *Sawyer v. Whitley*, 505 U.S. 333, 340 (1992). Bare allegations unsupplemented by evidence do not tend to establish actual innocence sufficient to overcome a procedural default. *Thomas v. Goldsmith*, 979 F.2d 746, 750 (9th Cir. 1992).

Demonstrating actual innocence is a narrow "gateway" through which a petitioner can obtain federal court consideration of habeas claims that are otherwise procedurally barred. *Schlup v. Delo*, 513 U.S. 298, 314-15 (1995); *Lee v. Lampert*, 653 F.3d 929, 932 (9th Cir. 2011) (en banc); *see also McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). In this regard, "actual innocence" means actual factual innocence, not mere legal insufficiency. *See, e.g.*, *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992). "To be credible, [an actual innocence] claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324. The narrow *Schlup* standard is satisfied only if the new, reliable evidence, together with the evidence adduced at trial, demonstrates that it is more likely than not that no reasonable juror would have found the petitioner guilty beyond a reasonable doubt. *Id.* at 329.

"[T]enable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *McQuiggen*, 569 U.S. at 386 (quoting *Schlup*, 513 U.S. at 329); *see also House v. Bell*, 547 U.S. 518, 538 (2006) (emphasizing that the *Schlup* standard is "demanding" and seldom met).

It is unclear whether the actual innocence gateway always applies to petitioners who pled guilty. *See Smith v. Baldwin*, 510 F.3d 1127, 1140 n.9 (9th Cir. 2007).

Petitioner argues that his procedural default is excused pursuant to *Martinez v. Ryan*, 566 U.S. 1 (2012), due to the ineffective assistance of post-conviction counsel and because he is actually innocent. Petitioner's actual innocence claim is apparently based on two alternative arguments: Either he is actually innocent because he acted in self-defense, or he is actually innocent because Blake was stabbed by his own knife and not by Petitioner. With respect to the second argument, Petitioner appears to theorize that

///

Blake may have stabbed himself, including possibly by tripping and falling on his own knife.

Following review of the record, the Court concludes that the procedural default issue has been insufficiently developed, in particular with respect to Petitioner's gateway claim of actual innocence. In state court, Petitioner submitted the report of an expert who reviewed some of Blake's medical records and photographs of Blake's wound, and concluded, among other things, that "the angle/orientation of knife blade penetration into J. Blake's abdomen is inconsistent with a thrusting/swinging arm/knife action by [petitioner] even if unresisted" and that "the angle/orientation of knife blade penetration into J. Blake's abdomen is consistent with inherent reactionary anatomical movement patterns of an individual such as J. Blake holding a knife in his right hand while falling forward." (ECF No. 56-17 (Ex. Q) at 10-12.)[5] The import of these findings cannot at this juncture be evaluated. Accordingly, the Court will deny the motion to dismiss on the basis of procedural default without prejudice and will appoint Petitioner counsel to represent him for the duration of these proceedings. Respondents will be free to raise the procedural default defense—and only the procedural default defense—in a renewed motion to dismiss after counsel has appeared in this matter, or they may choose to renew it in an answer.

## V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is therefore ordered that the motion to dismiss (ECF No. 124) is denied as follows:

1. The motion to dismiss the Petition as untimely is denied.
2. The motion to dismiss the Petition as unexhausted is denied.

[5]Citation is to CM/ECF number at the top of the page.

3. The motion to dismiss the Petition as procedurally defaulted is denied without prejudice to renew following the appearance of counsel on Petitioner's behalf.

It is further ordered that the Court *sua sponte* reconsiders its order denying appointment of counsel, determines that appointment of counsel is in the interests of justice, and appoints Petitioner counsel. A separate order appointing counsel and setting deadlines for the filing of a renewed motion to dismiss or answer will issue forthwith.

It is further ordered that Petitioner's motion for discovery and an evidentiary hearing (ECF No. 126) is denied without prejudice.

It is further ordered that in light of the appointment of counsel, Petitioner's "*Martinez*" motion (ECF No. 127) and motion for reconsideration regarding PACER fees (ECF No. 133) are denied.

It is further ordered that Petitioner's motion to consolidate (ECF No. 132) is denied.

DATED THIS 11th day of February 2019.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE