UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| KFIR SHLOMO HIRSCH<br>formerly known as CODY LEAVITT,<br><br>                  Petitioner,<br>    v.<br>DWIGHT NEVEN, *et al.*,<br>                  Respondents. | Case No. 2:12-cv-00625-MMD-NJK<br><br>ORDER |

This is a habeas corpus proceeding under 28 U.S.C. § 2254 brought by Petitioner Kfir Shlomo Hirsch, a Nevada prisoner who is represented by counsel. Currently before the Court is Respondents' Renewed Motion to Dismiss (ECF No. 157) (the "Motion") Hirsch's First Amended Petition for Writ of Habeas Corpus (ECF No. 50). Hirsch has opposed (ECF No. 164[1]) the Motion, and Respondents have replied (ECF No. 171). For the reasons discussed below, the Motion is granted.

**I.    BACKGROUND**[2]

    **A.    State Court Conviction**

Hirsch challenges a 2009 conviction and sentence imposed by the Eighth Judicial District Court for Clark County pursuant to a guilty plea. *See State of Nevada v. Leavitt*,

---

[1]The Court notes that Hirsch's response (ECF No. 164) is 47 pages long, excluding the tables of contents and authorities. The Local Rules of Civil Practice expressly limit such responses to 24 pages, and motions to exceed pages limits are disfavored. LR 7-3(b), (c). Hirsch's counsel did not seek leave of the Court to file an extended response. The Local Rules were drafted with knowledge that many—if not most—federal habeas cases involve complex legal questions. Longer page limits merely invite repetitive arguments, verbosity, string citation, unwarranted footnotes, and excessive block quotation, which waste judicial resources. Counsel is thus cautioned against violating the Local Rules by exceeding the standard page limits without leave of the Court.

[2]This procedural history is derived from the state court record located at ECF Nos. 51, 54, 56, and 98.

1

Case No. C248756. In January 2007, Hirsch was charged with one count of battery with use of a deadly weapon resulting in substantial bodily harm stemming from a December 2006 fight in which Hirsch stabbed Jarred Blake.[3] (ECF No. 56-1.) In a separate criminal case initiated two months later, Hirsch was charged with first degree kidnapping, battery with the use of a deadly weapon, sexual assault on a minor under 14 years of age, and lewdness with a child under the age of 14. *State of Nevada v. Leavitt*, Case No. C233866.[4] Trial counsel, Jason Weiner, negotiated a global resolution of both cases, and Hirsch signed a guilty plea agreement in October 2008. (ECF No. 56-4.) To resolve the other case, Case No. C233866, Hirsch pleaded guilty to one count of child abuse and neglect with substantial bodily harm. (*Id.*) For this case, Case No. C248756, he pleaded guilty to one count of battery with use of a deadly weapon resulting in substantial bodily harm. (*Id.*; ECF No. 56-6.)

Blake testified during the January 2009 sentencing hearing, admitting to rushing Hirsch: "I brought my knife out 'cause I thought [Hirsch] was trying to pick a fight with me, so he brought his out and I rushed towards him so he came towards me; that's how I got stabbed." (ECF No. 56-6 at 6.) Based on this testimony, the state court asked trial counsel whether Hirsch wanted to move to withdraw his guilty plea. (*Id.*) Counsel explained that Hirsch "agreed to accept the plea agreement from the State because he would not get the benefit in the other [case, Case No. C233866,] where there were sex offense and first degree kidnapping charges on a minor unless he accepted the negotiations in this case." (*Id.*) On January 23, 2009, the state court entered a judgment of conviction sentencing Hirsch to 48 to 120 months to run concurrent to the sentence imposed in Case No. C233866. (ECF No. 56-5.) Hirsch did not file a direct appeal.

---

[3]Details of the offense are summarized in the February 2019 Order (ECF No. 145).

[4]The conviction in Case No. C233866 is not directly at issue here as it was the subject of a different habeas action in this district: *Hirsch v. Neven*, 2:12-cv-00987-JCM-DJA (denying habeas petition on its merits in September 2019). But the case is relevant to the extent that the guilty plea agreement represents a global resolution of both cases.

## B. First State Petition and Post-Conviction Appeal

Hirsch filed a state petition for writ of habeas corpus on January 8, 2010, seeking post-conviction relief ("First State Petition"). (ECF No. 56-7.) Through post-conviction counsel, Stephanie Kice, Hirsch alleged three claims under the Nevada and United States constitutions: (1) trial counsel provided ineffective assistance of counsel ("IAC"), (2) the State could not prove every element of the offense beyond a reasonable doubt, and (3) the State failed to turn over evidence. (*Id.*) One week later, he filed a counseled motion to withdraw guilty plea, alleging that his guilty plea was not knowing, voluntary, and intelligent. (ECF No. 56-8.) The state court denied both the First State Petition and motion to withdraw guilty plea in September 2010. (ECF No. 56-16.)

Hirsch appealed ("First Post-Conviction Appeal"[5]) through post-conviction counsel, raising two issues: (1) the state court erred by not allowing Hirsch to withdraw his guilty plea, and (2) the state court erred by not allowing a full and fair evidentiary hearing. (ECF No. 56-24.) The Nevada Supreme Court affirmed the denial of relief. (ECF No. 56-26.)

## C. Federal Habeas Proceedings

On April 16, 2012, Hirsch initiated this federal habeas corpus proceeding *pro se*. (ECF No. 1.) The Court later appointed habeas counsel, Todd Leventhal, and granted Hirsch leave to amend. He filed a counseled First Amended Petition for Writ of Habeas Corpus (ECF No. 50) ("Amended Petition") in September 2013 with three grounds for relief: (1) trial counsel's multiple failures amounted to IAC, violating Hirsch's Sixth Amendment right to counsel; (2) post-conviction counsel's multiple failures amounted to IAC, violating Hirsch's Sixth Amendment right to counsel; and (3) Hirsch's conviction and sentence violate his Fourteenth Amendment right to due process because the State could not prove every element of the charged offenses beyond a reasonable doubt. This Court dismissed the Amended Petition as wholly unexhausted in February 2015. (ECF No. 68.[6])

---

[5]The Court will refer to the First State Petition and First Post-Conviction Appeal collectively as the "First Post-Conviction Proceedings."

[6]After dismissal, the Court granted federal habeas counsel's motion to withdraw and Hirsch proceeded *pro se*. (ECF No. 79.)

3

### D. Successive State Petition and Post-Conviction Appeal

In November 2015, Hirsch returned to state court *pro se*, filing a successive state petition for writ of habeas corpus ("Successive State Petition").[7] (ECF No. 98-1.) Hirsch used a court form for the Successive State Petition and repeatedly wrote "see habeas" in the space designated to respond to questions and describe the nature of his claims. (*Id.* at 7.) In the space for supporting facts, Hirsch stated: "This case is being attacked as conditions precedent to the C233866. The Guilty Plea Agreement was a joint bargain and so both cases are inextricably intertwined." (*Id.*) The state court denied the Successive State Petition as time-barred under NRS § 34.726(1) and further held that Hirsch failed to show good cause and prejudice to overcome the procedural bar. (ECF No. 98-10.)

Hirsch appealed ("Successive Post-Conviction Appeal"[8]). However, his informal appellate brief did not specify grounds for relief, instead asserting there was good cause to proceed on his previously filed briefs and current motions. (ECF No. 124-2 at 5.) The Nevada Court of Appeals affirmed the denial of relief finding that his Successive State Petition was both untimely and successive and, therefore "procedurally barred absent a demonstration of good cause and actual prejudice." (ECF No. 98-11 at 2 (citing NRS 34.726(1); NRS 34.810(2), (3)).) Because Hirsch did not demonstrate any deprivation of meaningful access to the courts or show that his claims could not have been raised in his First State Petition, the appellate court held that he failed to demonstrate cause and prejudice and the state court did not err in denying the Successive State Petition as procedurally barred. (*Id.* at 3.) A remittitur issued in September 2016. (ECF No. 98-13.)

### E. Reopened Federal Habeas Proceedings

The Court reopened this case in January 2018 upon Hirsch's request. (ECF Nos. 94, 121.) Respondents filed a motion to dismiss arguing, among other things, that

---

[7] In October 2013, Hirsch filed a second state petition for writ of habeas corpus, but it was dismissed because the allegations addressed the conditions of his confinement, not the validity of the conviction or sentence. (ECF No. 98-10 at 8.)

[8] The Court will refer to the Successive State Petition and Successive Post-Conviction Appeal collectively as the "Successive Post-Conviction Proceedings."

Hirsch's claims were unexhausted and procedurally defaulted. (ECF No. 124.) Hirsch argued that his procedural default is excused pursuant to *Martinez v. Ryan*, 566 U.S. 1 (2012), due to the ineffective assistance of post-conviction counsel and because he is actually innocent. (ECF No. 125.) The Court found that the exhaustion issue need not be decided because it was "clear that even if Hirsch's claims remain unexhausted, they are procedurally defaulted." (ECF No. 145 at 5.) Following a review of the record, the Court concluded that Hirsch's gateway claim of actual innocence was insufficiently developed. (*Id.* at 8.) Thus, the motion to dismiss was denied without prejudice as to procedural default and counsel was appointed to represent Hirsch for the duration of these proceedings. (*Id.*) The Court further stated: "Respondents will be free to raise the procedural default defense—and only the procedural default defense—in a renewed motion to dismiss after counsel has appeared in this matter, or they may choose to renew it in an answer." (*Id.*)

Following the appearance of counsel, Respondents renewed their dismissal Motion.

**II.     DISCUSSION**

   **A.     The Court's Prior Orders Stand as the Law of the Case**

"Issues that a district court determines during pretrial motions become law of the case." *United States v. Phillips*, 367 F.3d 846, 856 (9th Cir. 2004) (citation omitted). "Under the 'law of the case' doctrine, a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case." *United States v. Jingles*, 702 F.3d 494, 499 (9th Cir. 2012) (quoting *Richardson v. United States,* 841 F.2d 993, 996 (9th Cir. 1988)). " 'For the doctrine to apply, the issue in question must have been decided explicitly or by necessary implication in [the] previous disposition'." *Id.* at 499–500 (quoting *United States v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000) (alteration in original)).

As a threshold matter, the Court notes that it will not revisit the prior rulings regarding exhaustion and procedural default. Hirsch's response contends that the

February 2015 Order (ECF No. 68) dismissing the Amended Petition as unexhausted was superseded by the February 2019 Order (ECF No. 145), which declined to address exhaustion. Building on that premise, Hirsch argues at length that he fully exhausted his claims in the first post-conviction proceedings; thus, the procedural default of his Successive State Petition is moot and does not provide a basis to dismiss Ground 1.

The underlying premise lacks merit. The February 2019 Order did not supersede the February 2015 Order because they address different issues. The February 2015 Order determined that the Amended Petition was unexhausted in relation to the first post-conviction proceedings, while the February 2019 Order determined the Amended Petition was procedurally defaulted in relation to the Successive Post-Conviction Proceedings. Both decisions are now the law of the case, as Hirsch recognizes. (*See* ECF No. 164 at 10-11, n.2 (noting that the "Court's timeliness ruling is now the law of the case").) Hirsch does not ask the Court to reconsider its prior rulings or argue that the law of the case doctrine should not apply.[9] The Court permitted a renewed dismissal motion to give Hirsch an opportunity to develop his arguments to overcome the procedural default—not to relitigate the prior rulings on exhaustion and procedural default. The analysis in this order is therefore limited to determining whether Hirsch can overcome the procedural default.

### B. *Martinez* Does Not Excuse Hirsch's Procedural Default

Where a petitioner has "procedurally defaulted" a claim, federal review is barred unless he "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Generally, post-conviction counsel's ineffectiveness does not qualify as cause to excuse a procedural default. *Id.* at 754-55. However, the Supreme Court created a narrow

---

[9]A court may decline to apply the law of the case doctrine if "(1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial." *Gonzalez v. Arizona*, 677 F.3d 383, 390 n.4 (9th Cir. 2012) (en banc) (citation and internal quotation marks omitted).

exception to the general rule that errors of post-conviction counsel cannot provide cause for a procedural default in *Martinez*. Under *Martinez*, the procedural default of a substantial claim of ineffective assistance of trial counsel is excused, if (i) state law requires that all claims be brought in the initial-review collateral proceeding and (ii) in that proceeding there was no counsel or counsel was ineffective. *Id.* at 17. But *Martinez* cannot excuse the procedural default of a substantive claim of trial-court error, ineffective assistance of appellate counsel, or "attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts." *Id.* at 16-17; *see also Davila v. Davis*, --- U.S. ----, 137 S. Ct. 2058, 2064 (2017).

Respondents argue that *Martinez* cannot supply cause to overcome the default of Hirsch's three claims. (ECF No. 157 at 6-7.) They first contend that *Martinez* cannot establish cause for Ground 1 because that IAC claim was not defaulted as a result of post-conviction counsel's deficient performance in an initial-review collateral proceeding (*i.e.*, the First State Petition). Rather, Ground 1 was defaulted in the *successive* collateral proceedings (*i.e.*, the *Successive* Post-Conviction Proceedings), which Hirsch litigated *pro se*. Second, they assert that *Martinez* cannot save Ground 2 because there is no right to counsel in post-conviction proceedings and *Martinez* did not create such a right. Third, Respondents argue that *Martinez* does not apply to substantive claims such as Ground 3.

Hirsch maintains that *Martinez* applies based on post-conviction counsel's errors in the first post-conviction proceedings. (ECF No. 164 at 35-53.) However, he acknowledges that Ground 2 is not viable as a freestanding IAC claim.

The *Martinez* exception is inapplicable to Grounds 2 and 3 because a *Martinez* analysis may only be invoked when the underlying claims are ineffective-assistance-of-trial-counsel claims. As Hirsch concedes, Ground 2 is not cognizable in federal habeas. *See* 28 U.S.C. § 2254(i) (stating that the "ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for

relief in a [§ 2254] proceeding"); *Pennsylvania v. Finley*, 481 U.S. 551, 556-57 (1987) (finding no freestanding constitutional right to the effective assistance of post-conviction counsel). The Court will therefore dismiss Ground 2 with prejudice as non-cognizable. Ground 3 is a substantive claim, and *Martinez* expressly precludes an exception for the procedural default of a substantive claim. *See* 566 U.S. at 16-17.

*Martinez* does not apply to Ground 1 because post-conviction counsel did not cause the default and the default did not occur in "initial-review collateral proceedings." *See id.* at 8 (defining these as "collateral proceedings which provide the first occasion to raise a claim of ineffective assistance at trial"). The narrow *Martinez* exception allows a federal habeas court to hear an IAC claim "when an attorney's errors (or the absence of an attorney) *caused* a procedural default *in an initial-review collateral proceeding*." *Id.* at 14. Hirsch defaulted Ground 1 in the Successive Post-Conviction Proceedings, not the first, and the Successive Post-Conviction Proceedings do not qualify as "initial-review collateral proceedings" under *Martinez*. The First State Petition was Hirsch's first opportunity to raise his IAC claim. Further, post-conviction counsel did not cause the default since Hirsch appeared *pro se* in the Successive Post-Conviction Proceedings years after post-conviction counsel no longer represented Hirsch.

Because *Martinez* does not apply, and Ground 2 is not cognizable, Grounds 1 and 3 are procedurally barred unless Hirsch can establish his claim of actual innocence.

### C. Hirsch Has Not Established Actual Innocence

A convincing showing of actual innocence may enable habeas petitioners to overcome a procedural bar to consideration of the merits of their constitutional claims. *Schlup v. Delo*, 513 U.S. 298, 314-16 (1995). "[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar [or] expiration of the statute of limitations." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) (citation omitted). However, the Supreme Court has cautioned that "tenable actual-innocence gateway pleas are rare. *Id.* (quoting *Schlup*, 513 U.S. at 329); *House v. Bell*, 547 U.S. 518, 538 (2006) (emphasizing that the *Schlup* standard is "demanding" and

seldom met). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324.

To demonstrate actual innocence, "a petitioner must show that, in light of all the evidence, including evidence not introduced at trial, 'it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt'." *Majoy v. Roe*, 296 F.3d 770, 776 (9th Cir. 2002) (quoting *Schlup*, 513 U.S. at 316). A petitioner can also demonstrate actual innocence by showing that, in light of subsequent case law, he cannot, as a legal matter, have committed the crime based on the facts under which he was convicted. *Bousley v. United States*, 523 U.S. 614, 624 (1998); *Vosgien v. Persson*, 742 F.3d 1131, 1135 (9th Cir. 2014). However, "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623-24 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)). Additionally, "in cases where the State has foregone more serious charges in the course of plea bargaining, the petitioner's burden of demonstrating actual innocence must also extend to the more serious charges." *Jaramillo v. Stewart*, 340 F.3d 877, 883 (9th Cir. 2003) (citing *Bousley*, 523 U.S. at 624).

The record contains three descriptions of the December 2006 fight by the victim, Jarred Blake. Blake's first description is memorialized in his statement to the police after the fight and summarized as follows:

> a physical altercation occurred between Cody and Jared in the front yard, at which time they "calmed down." Jared overheard Cody threaten to stab him, at which time Cody approached Jared with a knife. Jared "kicked" Cody backward and Cody then "came back" at him and stabbed him.

(ECF No. 56-1 at 9.) Blake's second description occurred at the 2009 sentencing hearing where he testified: "I brought my knife out 'cause I thought [Hirsch] was trying to pick a fight with me, so he brought his out and I rushed towards him so he came towards me; that's how I got stabbed." (ECF No. 56-6 at 6.) Blake's third description is found in a 2010 declaration submitted with the First State Petition. (ECF No. 54-3.) Blake stated that

9

Hirsch "started coming for [Blake], so [Blake] started to charge him." (*Id.* at 9, ¶ 12.) Blake then kicked Hirsch's torso but Hirsch stayed standing and as Hirsch "regained his balance swung his arm towards [Blake] and stabbed [him] on his right side." (*Id.* at 10, ¶ 13.)

Hirsch's actual innocence claim is based on two alternative arguments: either he is actually innocent (1) because he acted in self-defense, or (2) because Blake was stabbed by his own knife—not by Hirsch's knife. (ECF No. 164 at 26-35.) With regard to self-defense, Hirsch relies on Blake's 2009 testimony to show that Blake was the aggressor in the fight. Hirsch points out that Blake did not testify that Hirsch stabbed him, and asserts that Blake made himself out to be the aggressor. Blake's testimony is more reliable than his 2006 police statement, Hirsch claims, because Blake wanted to present himself to the police in a positive light and as the victim. Hirsch further argues the contradictions between Blake's testimony and his 2006 police statement and 2010 declaration are resolved by the expert report, which allegedly exposes the parts of Blake's claims that could not be true.

The expert report of Barry T. Bates, B.S.E., Ph.D. (ECF No. 56-17 at 10-12), an expert in human performance and biomechanics, purportedly supports Hirsch's second argument: Hirsh did not stab Blake—Blake stabbed himself. Dr. Bates opined that "the angle/orientation of knife blade penetration into J. Blake's abdomen is consistent with inherent reactionary anatomical movement patterns of an individual, such as J. Blake, holding a knife in his right hand while falling forward." (*Id.* at 12, ¶ 7.) Based on this opinion, Hirsch argues that Blake's 2010 declaration, recalling Hirsch swinging his knife, could not be true because Blake's injury was more consistent with Blake falling on his own knife. He adds that Blake's actions after the fight—failing to tell the police he also had a knife and hiding his own knife on the way to the hospital—evidences a consciousness of guilt. Hirsch concludes that Dr. Bates' opinion is new, reliable, scientific evidence showing that Hirsch could not have swung the knife and stabbed Blake; rather, Blake fell on his own knife.

Respondents argue that Hirsch fails to meet the demanding *Schlup* standard

because the evidence he presents is more equivocal than definitive. Blake's testimony, they assert, was not an explicit confession that he stabbed himself or was the primary aggressor. Respondents contend that Blake's testimony was ambiguous at best and does not convincingly undermine the State's case. They further argue that Blake's 2006 statement to the police and his 2010 sworn declaration consistently describe Hirsch as an equal participant in the altercation—not an individual exercising self-defense. Respondents maintain that Dr. Bates' report stops short of definitively establishing Hirsch's self-defense claim, or the alternative theory that Blake fell on his own knife. They point out that Dr. Bates' opinion omits the potential impact of a struggle between Blake and Hirsch. Even if Hirsch could show that Blake fell on his own knife, Respondents claim the State would argue at trial that witnesses observed Hirsch go into the house to retrieve his knife before confronting Blake and the struggle was the event precedent to the fall. Thus, if this case had gone to trial—even with Dr. Bates' report—a reasonable juror could still vote to convict Hirsch.

The Court finds that Hirsch has not established a convincing showing of actual innocence to overcome the procedural default. First, because the guilty plea agreement was negotiated and executed as a global resolution of two criminal cases, Case Nos. C248756 and C233866, Hirsch would have to demonstrate that actual innocence extends to the more serious charges the State withdrew in the course of plea bargaining. *See Bousley*, 523 U.S. at 624; *Vosgien*, 742 F.3d at 1136. Although Hirsch pleaded guilty in this case (Case No. C248756) to the same count of battery with use of a deadly weapon as initially charged, he received a reduction of charges in the second case. He was initially charged in Case No. C233866 with first degree kidnapping, battery with the use of a deadly weapon, sexual assault on a minor under fourteen years of age, and lewdness with a child under the age of fourteen, but he pleaded guilty to one count of child abuse and neglect with substantial bodily harm to resolve the case. Hirsch makes no attempt to show actual innocence of the charges in Case No. C233866 that were dismissed as a result of the plea agreement.

Hirsch's claim of actual innocence also fails on the merits. Hirsch cannot rely on Blake's 2009 testimony as new evidence because the state court heard his testimony before rendering a sentence and entering judgment. The state court immediately identified the potentially exculpatory nature of Blake's testimony and the contradiction between his testimony and 2006 police statement. (ECF No. 56-6 at 6.) When asked whether Hirsch wanted to move to withdraw his guilty plea, trial counsel told the state court Hirsch "agreed to accept the plea agreement from the State because he would not get the benefit in the other [case, C233866,] where there were sex offense and first degree kidnapping charges on a minor unless he accepted the negotiations in this case." (*Id.*) Since the state court was aware of the discrepancies in Blake's descriptions of the fight, it is not new evidence.

In addition, Blake's testimony and Dr. Bates' opinion do not show it is more likely than not that no reasonable juror would have found Hirsch guilty beyond a reasonable doubt. As Respondents point out, Blake did not confess to stabbing himself while testifying nor explicitly state that he was the primary aggressor. (*Id.*) Blake's testimony was ambiguous and does not establish self-defense, particularly when viewed in light of Blake's 2010 declaration. Likewise, Dr. Bates' opinion falls far short of establishing a fundamental miscarriage of justice. Dr. Bates acknowledged that he was unable to inspect and compare Blake's knife, and sufficient details of Blake's wound were unavailable to determine whether Hirsch's knife caused the wound. (ECF No. 56-17 at 12, ¶¶ 2-3.) Rather than establishing that Hirsch did not stab Blake and Blake stabbed himself, Dr. Bates' conclusion was equivocal: Blake's injury was merely "consistent with inherent reactionary anatomical movement patterns of an individual, such as J. Blake, holding a knife in his right hand while falling forward." (*Id.* at 12, ¶ 7.) Thus, contrary to Hirsch's arguments, the expert's opinion does not reveal that Blake's unfavorable version of events simply could not be true and Hirsch could not have stabbed Blake. In short, Blake's 2009 testimony and Dr. Bates' report do not convincingly undermine the State's case such that it is more likely than not that no reasonable juror would have convicted Hirsch.

Accordingly, Hirsch's attempt to overcome the procedural default by a showing of actual innocence fails.

## III. CERTIFICATE OF APPEALABILITY

The standard for the issuance of a certificate of appealability requires a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c). The Supreme Court has interpreted § 2253(c) as follows: "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also James v. Giles*, 221 F.3d 1074, 1077-79 (9th Cir. 2000).

Applying this standard, the Court finds that a certificate of appealability is unwarranted in this case. The Court will therefore deny Hirsch a certificate of appealability.

## IV. CONCLUSION

In accordance with the foregoing, it is therefore ordered that Respondents' Motion to Dismiss (ECF No. 157) is granted as follows: Grounds 1 and 3 are dismissed with prejudice as procedurally defaulted, and Ground 2 is dismissed with prejudice as non-cognizable.

It further is ordered that a certificate of appealability is denied, as reasonable jurists would not find the district court's dismissal of the federal petition to be debatable or wrong, for the reasons discussed herein.

The Clerk of Court is instructed to enter final judgment accordingly, in favor of Respondents and against Hirsch, dismissing this action with prejudice and close this case.

DATED THIS 2nd day of April 2020.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE